IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TRACY R. BRUMFIELD,
     Plaintiff,

vs.                             Case No.: 5:16cv253/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 8, 14). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

On November 30, 2012, Plaintiff filed an application for DIB, in which she alleged disability beginning October 1, 2010 (tr. 11).[1] Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on February 4, 2015, and on April 9, 2015, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 11–25).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.     FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (see tr. 11–25):

(1)     Plaintiff last met the insured status requirements of the Act on December 31, 2011;

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on May 5, 2017 (ECF No. 16).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

(2)     Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date, through her last date insured;

(3)     Through the date last insured, Plaintiff had the following severe impairments:  lumbar facet syndrome, degenerative disc disease of the lumbar spine, cervical spondylosis, fibromyalgia, status post cervical fusion;

(4)     Through the date last insured, Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

(5)     Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  More specifically, Plaintiff could occasionally climb stairs and frequently climb ramps but could not climb ladders, ropes, or scaffolds.  She could engage in frequent balancing, but no more than occasional kneeling, crouching, stooping, or crawling.  Plaintiff was to avoid unprotected heights and could tolerate no more than occasional exposure to hazards, such as heavy machinery, heavy vibrations, and environments with extreme temperatures.  Plaintiff could engage in only occasional overhead reaching, and frequent reaching in other directions, as well as frequent handling, fingering, and feeling.  Plaintiff could sit no more than 15 consecutive minutes before having to stand to relieve any discomfort, stand no more than 15 minutes before having to sit and rest, and walk up to 15 minutes before having to stop;

(6)     Plaintiff was unable to perform any past relevant work;

(7)     Plaintiff was born on July 30, 1962, and thus was 49 years old—a "younger individual, or one aged between 45 and 59—on the date last insured;

(8)     Plaintiff has at least a high school education and is able to communicate in English;

(9)     Plaintiff has acquired work skills from past relevant work;

(10)   Considering Plaintiff's age, education, work experience, and RFC, Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy;

(11)   Plaintiff was not under a disability, as defined in the Act, at any time from October 1, 2010, the alleged onset date, through December 31, 2011, the date last insured.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence.  42 U.S.C.

§ 405(g); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998); <u>Lewis</u>, 125 F.3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her]

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    DISCUSSION AND INCORPORATED SUMMARY OF RELEVANT EVIDENCE

Plaintiff raises three issues in this appeal, which the undersigned has rearranged for organizational purposes. Plaintiff first contends the ALJ erred in failing to find her mental impairments severe at Step 2, claiming that she had moderate limitations in concentration, persistence, or pace. Second, Plaintiff contends the ALJ erred in relying upon the testimony of the Vocational Expert ("VE") because the hypothetical questions he posed to the VE failed to include mental limitations or physical restrictions related to Plaintiff's carpal tunnel syndrome. Last, Plaintiff contends the ALJ erred in discounting the severity of her

impairments due to her failure to seek treatment during the relevant period, when the failure was due to an inability to pay for treatment.

A.     Severity of Mental Impairments

In evaluating the severity of a claimant's mental impairments at Step 2 of the sequential analysis, the ALJ first evaluates the signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment (called the "paragraph A criteria") and then rates the degree of functional limitation from the mental impairment(s) in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (called the "paragraph B criteria").  20 C.F.R. § 404.1520a(a)–(d). If the ALJ rates the claimant's limitations as "none" or "mild" in the areas of activities of daily living, social functioning, and concentration, persistence, or pace, and "none" in the area of episodes of decompensation, the claimant's mental impairment(s) will be found to be "not severe."  *Id*. § 404.1520a(c)(3), (d)(1).

Here, the ALJ evaluated Plaintiff's identified mental problems, anxiety and depression, in accordance with the regulations, first by determining that each amounted to a medically determinable impairment (tr. 14).  The ALJ then concluded that Plaintiff had mild limitations in the first three functional areas and no episodes

of decompensation in the fourth area, and thus that her mental impairments were not severe (*id*.).

In support of the ALJ's finding of mild limitations in the third functional area—concentration, persistence, or pace—the finding with which Plaintiff asserts error, the ALJ noted Plaintiff's own reports that she had no problems paying attention or "following written and spoken directions well" (tr. 14). The ALJ also noted Plaintiff's reports that she "has some difficulty with finishing what she starts, such as chores," and that she "does not handle stress or changes in routine well" (*id*.). Plaintiff argues that her reports regarding difficulty with completing chores, and deficits in handling stress or changes-in-routine, indicate a moderate limitation in the third functional area, such that her anxiety and/or depression should have been deemed severe. The undersigned disagrees.

The ALJ's findings are supported by the record and are in large part derived from a detailed functional report completed by Plaintiff (*see* tr. 14–15, referencing "Exhibit 8E" or tr. 199–206). This report reflects that Plaintiff takes care of others in her household, including her husband, for whom she does "daily things" including laundry and cooking; she also cares for a pet and prepares her own meals on a daily basis (tr. 200–01). Plaintiff also reported that she takes care of herself with "no problem" in all areas of self-care, to include dressing, bathing, feeding, and fixing her

hair (tr. 200). She further noted she needs no special reminders to take care of

personal needs, for grooming, to take medicine, or "to go places" (tr. 201, 203).

Plaintiff additionally noted that she is able to pay bills, count change, handle a

savings account, and use a checkbook (tr. 202). Finally, although Plaintiff did report

some difficulty finishing chores, as the ALJ noted and as Plaintiff points out in

support of this ground for relief, she also reported no difficulty finishing a

conversation, reading, or watching a movie (*see* tr. 204). And when specifically

asked, "For how long can you pay attention?" Plaintiff responded by stating, "I'm ok

w[ith] that." (*id*.). Thus, substantial evidence in the record as a whole supports the

ALJ's finding at Step 2 that Plaintiff had only mild limitations in concentration,

persistence, or pace and, correspondingly, that she had no severe mental

impairments.[2]

---

[2] It should also be noted that, during the hearing, the ALJ asked Plaintiff's attorney the following question: "What do you contend are the medically-determinable severe impairments in this case?" (tr. 35). Plaintiff's attorney responded by listing physical impairments only (tr. 35–36; *see also* tr. 37–38, attorney's opening statement, again discussing physical impairments only). Moreover, Plaintiff testified that she stopped working due to her back, neck, and shoulders (tr. 39–41), and the questions posed to her by her attorney indicated that she was unable to work due to physical conditions only (*see, e.g.*, tr. 46 ("Have the physical problems . . . affected your ability to do social things?"); tr. 47 ("Do you not go [to church] anymore because of the physical problems?")).

The Eleventh Circuit has concluded that an ALJ has no "'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Street v. Barnhart, 133 F. App'x 621, 627 (11th Cir. 2005) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)). Here, Plaintiff did allege disability based on physical and mental impairments in her application (*see, e.g.*, tr. 63), but—based on her attorney's statements and her own testimony during the hearing, as set forth above—she seemingly abandoned her claim of

Alternatively, there is no error because the ALJ satisfied the threshold inquiry at Step 2 by identifying several severe physical impairments. *See, e.g.*, Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (the finding of any severe impairment is enough to satisfy the requirement at Step 2); Vangile v. Comm'r, Soc. Sec. Admin., 695 F. App'x 510, 513 (11th Cir. 2017) ("If the ALJ finds any severe impairment, she must proceed to the third step of the analysis.") (citing Jamison, 814 F.2d 588).

B.      Testimony of the Vocational Expert

Once a claimant demonstrates that she cannot perform her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that the claimant can perform. *See* Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). Obtaining testimony from a VE is the preferred means for introducing evidence that there are jobs in the economy that the claimant can perform. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

"In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's

---

disability based on depression and/or anxiety. Moreover, this was not a case where the claimant was unrepresented, which would have subjected the ALJ to a heightened duty to probe into all of the relevant facts surrounding Plaintiff's disability claim. *See, e.g.*, Brown v. Shalala, 44 F.3d 931, 934–35 (11th Cir. 1995) (holding that, where the right to counsel has not been waived, if claimant is not represented, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."). In any event—i.e., despite the potential abandonment of this claim—the ALJ's decision reflects that he thoroughly analyzed Plaintiff's mental impairments in accordance with the Regulations.

impairments." Jones, 190 F.3d at 1229. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." Ingram, 496 F.3d at 1270 (quotations and citation omitted). A "hypothetical question [] adequately account[s] for a claimant's limitations . . . when the question [] otherwise implicitly account[s] for the[] limitations." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).

Here, in questioning the VE about whether jobs existed in the national economy that a hypothetical individual could perform, the ALJ posed the following question:

> Please assume someone of [Plaintiff's] age classification, educational background, and work experience, and assume said person is able to perform a range of sedentary work as follows.
>
> Able to lift, carry, push, pull no more than ten pounds frequently or occasionally; person cannot climb ladders, ropes or scaffolds; occasionally climb stairs, frequently ramps; person is limited to frequent balancing but no more than occasional kneeling, crouching, stooping or crawling.
>
> Person can -- should avoid unprotected heights; tolerate no more than occasional exposure to hazards such as heavy machinery as well as environments of extreme temperatures and heavy vibrations; person is limited to only occasional overhead reaching; frequent reaching in other directions; could also frequently handle, finger, and feel. Person is able to sit no more than 15 consecutive minutes before having to stand briefly to relieve any discomfort; stand for no more than that before having to sit and rest; and walk no further than 15 consecutive minutes before having to stop.

(tr. 53–54).

The VE opined that such a person could not perform Plaintiff's past work as a counter attendant, cafeteria, which Plaintiff performed at the light level of exertion, or as a caregiver, which typically is performed at a medium level of exertion but was performed by Plaintiff at the light level of exertion (*see* tr. 53). The VE additionally opined that, although the hypothetical person could not perform Plaintiff's past work, the person could perform other available work, such as information clerk; document preparer, microfilming; and surveillance system monitor, all of which are performed at the sedentary level of exertion (tr. 54–55). The ALJ then restricted the hypothetical individual to occasional handling (instead of frequent handling) and occasional reaching in all directions (instead of occasional reaching only overhead and frequent reaching in all other directions) (tr. 56). In response, the VE noted that the person could still perform the information clerk and surveillance system positions (but presumably not the document preparer, microfilming position), and an additional (sedentary) position of callout operator (*id*.).

Plaintiff's counsel asked the VE that if, as Plaintiff had testified, "she had problems using her hands and after she used them for approximately 30 minutes she needed to take a 30 minute break . . . would that affect her ability to work the sedentary jobs [previously] mentioned or do those jobs require at least occasional use

of the hands bilaterally for reaching, handling, [and/or] fingering?" (tr. 57). The VE answered that it would eliminate all of the positions except surveillance system monitor (*id.*). Lastly, in response to a question from Plaintiff's counsel, the VE testified that if pain affected Plaintiff "for 20 percent of an eight hour workday to the point that she would not be able to focus and concentrate . . . [such that she would be] off task for 20 percent of the eight hour workday," she would not be able to sustain any competitive work activity (*id.*).

### 1.   Mental Limitations as to Concentration, Persistence, or Pace

Plaintiff first contends that the ALJ should have included mental limitations in the hypothetical questions he posed to the VE. To the extent Plaintiff contends the ALJ should have included *moderate* limitations in concentration, persistence, or pace, the ALJ did not err in failing to do so, as the ALJ need not include limitations that he has properly rejected as unsupported.

To the extent Plaintiff contends the ALJ should have included *mild* mental limitations in the hypothetical questions posed to the VE, the court finds no error or, that if there is any error, it is harmless. Initially, Plaintiff's attorney included no mental limitations in his hypothetical questions when he was given the opportunity to present them, and—as previously noted—he otherwise failed to put the ALJ on

notice of Plaintiff's contention that any mental limitations affected her ability to work.[3]

Additionally, the cases upon which Plaintiff relies in support of this claim are inapposite for a number of reasons. These cases stand for the general proposition that, preferably, an ALJ should elicit testimony from a VE when nonexertional impairments exist. For example, Plaintiff cites Allen v. Sullivan, 880 F.2d 1200 (11th Cir. 1989), wherein the court reversed the decision of an ALJ who found that the claimant had a severe dysthymic disorder and borderline intellectual functioning, and had nonexertional limitations concerning performing complex tasks and tolerating extraordinary stress, but that these limitations reduced the full range of light work only slightly and therefore applied the grids to determine that the plaintiff was not disabled. In the instant case, the ALJ did not find any mental impairment severe at Step 2 or rely on the grids to find Plaintiff not disabled. Likewise, two cases cited by the Allen court in the same discussion concerned similar facts, one with respect to mental impairments, Tucker v. Schweiker, 689 F.2d 777, 780 (8th Cir. 1982) (ALJ erred in relying on grids where claimant had a schizoid personality, which, even if

---

[3] As discussed *supra*, counsel did elicit testimony from the VE that, if pain affected Plaintiff for 20% of an eight-hour workday, to the point that she would not be able to focus and concentrate and would be "off task" for 20% of the workday, she would be unable to work (tr. 57). However, an inability to concentrate for 20% of an entire workday cannot be characterized as only a "mild" limitation in one's ability to concentrate. Moreover, counsel's question was based upon Plaintiff's subjective complaints of pain, which the ALJ found not credible to the extent alleged.

mild, could cause certain jobs to be contraindicated by its resulting nonexertional limitations), and the other with respect to physical impairments, <u>Gagnon v. Sec'y of Health and Human Serv's</u>, 666 F.2d 662, 666 n.8 (1st Cir. 1981) (ALJ erred in relying exclusively on the grids and making no finding as to whether or by how much claimant's "work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations," where Gagnon produced evidence that he must avoid moving machinery, marked temperature and humidity changes, and dust, fumes and gases and also demonstrated evidence of fainting spells, pain, and significant postural/manipulative disabilities which were the nonexertional side effects of a missing leg). Thus, both <u>Tucker</u> and <u>Gagnon</u> are distinguishable from the facts at bar, as is <u>Allen</u>, because in those cases the ALJ relied exclusively on the grids to find the claimants not disabled, and the record in those cases documented significant nonexertional limitations.

Here, the record is devoid of credible evidence from the relevant period demonstrating that Plaintiff's depression or anxiety limited her ability to function in any significant way. To illustrate, Plaintiff did not receive specialized mental health treatment at any point but instead received treatment for depression only from her gynecologist (*see* tr. 179), which suggests her symptoms were slight. Moreover, Plaintiff's gynecologist did not treat her for depression or anxiety until <u>after</u> the

relevant period (*see, e.g.*, tr. 274–80 (records dated in September, October, and November of 2012, assessing depressive disorder, not elsewhere classified, and prescribing Zoloft)). To be sure, the only gynecologic record from within the relevant period, dated January 31, 2011, reflects no diagnosis or other indication of depression or anxiety (*see* tr. 301–03). To the contrary, it states that Plaintiff was alert, in no acute distress, and "grossly oriented to person, place and time," and that her mood was normal and her affect appropriate (tr. 301–02). Likewise, the records that chronologically follow the record of January 2011, do not document depression (until September of 2012) (*see* tr. 299–300, 295–98, 288–90 (records dated May 15 and May 30, 2012, and August 9, 2012)). They also show that Plaintiff was grossly oriented to person, place, and time; that her memory was intact; that her mood was normal and affect appropriate; that her speech was normal; that her insight and judgement were intact; that her attention span was normal; and/or that no delusions or hallucinations were present (*see, e.g.*, tr. 300, 296, 289).

Additionally, the Functional Report completed by Plaintiff (tr. 199–206) belies her allegations of any significant functional limitations, as the ALJ found (tr. 14–15).

In sum, the ALJ did not err in failing to include mild mental limitations in the questions he posed to the VE, even though at Step 2—in determining that Plaintiff had no severe mental impairment—he found mild mental limitations in the three

functional areas, because the record clearly establishes that Plaintiff could work despite those limitations. Indeed, the ALJ specifically found that Plaintiff's mental impairments caused *no more than* a *minimal* limitation in Plaintiff's ability to perform basic mental work activities, and this finding is supported by the record (tr. 14). The ALJ also acknowledged that the limitations identified in the paragraph B criteria are not an RFC assessment, but are used to rate the severity of mental impairment(s) at Steps 2 and 3 of the sequential evaluation process, and that the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions (tr. 14–15). He then excluded mental limitations from the RFC, in light of his finding that Plaintiff's "minimal, at most," mental limitations did not affect her ability to work (*id.*). *Cf., e.g.,* Winschel, 631 F.3d at 1181 (ALJ erred in excluding from his hypothetical questions *moderate* limitations in concentration, persistence, or pace found *at Step 2* (which correlates with a finding that a mental impairment is severe), where there was no indication from the medical evidence that the claimant could perform work despite his limitations); Varga v. Colvin, 794 F.3d 809, 814 (7th Cir. 2015) (ALJ erred in excluding from his hypothetical questions *moderate* limitations in concentration, persistence, or pace found *at Steps 2 and 3*). *See also* Colon v. Colvin, 660 F. App'x 867, 870 (11th Cir. 2016) (any error in failing to include mental limitations in RFC

was harmless where claimant's depression caused no mental limitations that affected his RFC).

As a final point, the court notes it has found no error with regard to the ALJ's finding at Step 2 that Plaintiff had no severe mental impairment. As the caselaw makes clear, an impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Thus, given that Plaintiff's depression and anxiety would not be expected to interfere with her ability to work, *and* the record contains no credible evidence to the contrary, there was no need for the ALJ to include mental limitations in the hypothetical questions of the VE or in Plaintiff's RFC.

2.    Physical Limitations as to Carpal Tunnel Syndrome ("CTS")

Plaintiff also contends the ALJ erred in failing to include limitations related to her CTS in the hypothetical questions posed to the VE. In support of this contention, Plaintiff points to EMG studies obtained in August and/or November of 2006 and a complaint she made of "bilateral hand numbness" in November of 2006 (ECF No. 18 at 7, 8 (referencing tr. 373, 398, 395, respectively)). However, this evidence predates the relevant period by about four years, as the ALJ noted (*see* tr. 17). Nevertheless,

the ALJ noted that a physical examination, conducted in November 2006 at the time of Plaintiff's complaint of bilateral hand numbness, revealed the following benign findings: "Spurling's maneuver was negative for neurologic symptoms of the upper extremity . . . . [T]he claimant's sensation was intact to crude touch. Her strength was 5 out of 5." (tr 18 (citing tr. 396)). Additionally, the record shows that Plaintiff continued working full time through 2008 as a cafeteria worker (tr. 40; *see also, e.g.*, tr. 151–52 (earnings summary)), well after the EMG studies were obtained and well after she complained of numbness. The record also shows that Plaintiff worked part time as a caregiver during the first quarter of 2011, after her alleged onset date and during the period under adjudication (tr. 162). *See* 20 C.F.R. § 404.1571 (work performed during any period in which a claimant alleges she was under a disability may demonstrate an ability to perform substantial gainful activity); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (in discounting claimant's complaints of pain, ALJ did not err in considering fact that claimant worked washing mobile homes during the adjudicated period); *see also* Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("it was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain").[4]

---

[4] Plaintiff makes a related argument that the ALJ erred in failing to find her CTS severe. As previously discussed, the ALJ satisfied the threshold inquiry at Step 2 by identifying various severe impairments. Jamison, 814 F.2d at 588. Moreover, the ALJ acknowledged that Plaintiff was diagnosed with CTS in late 2006 based on EMG studies. It is well established that the mere

Finally, Plaintiff omitted any mention of CTS in her Disability Report, which was completed when she applied for disability, in response to a question that required her to list all physical and mental conditions that limit her ability to work (tr. 175). Plaintiff also failed to indicate any problems "Using Hands" on her Function Report, despite being asked to check all items that her impairments affected (tr. 204).

Nevertheless, the ALJ did include upper extremity restrictions in the hypothetical questions, including some limitations relating to handling (gross manipulation), fingering (fine manipulation), and feeling. Though Plaintiff may contend her restrictions are greater than those established by the ALJ, the record—including the opinion of her treating physician and her work history—does not support the contention. In sum, the record as whole supports the ALJ's findings with respect to Plaintiff's CTS.

C.     Lack of Medical Care During Relevant Period

As her final ground for relief, Plaintiff contends the ALJ erred in discounting the severity of her impairments due to her failure to seek treatment during the relevant period, when the failure was due to an inability to pay for treatment.

---

existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does a diagnosis alone undermine an ALJ's determination in that regard. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Furthermore, as the ALJ explained, treating physician Cory R. Gaiser, D.O., opined during the same visit in December 2006 when he assessed CTS, that "despite her multiple complaints, [Plaintiff] would not be disabled" and could work with limited or modified duties (tr. 19, 373).

Initially, Plaintiff does not dispute that she failed to obtain treatment during the relevant period, as the ALJ found (*see* tr. 17, 20[5]; *see also* ECF No. 16-1 at 1–3 (Court Transcript Index, listing all medical evidence of record and the dates of such evidence)). Plaintiff simply contends that her failure to do so was due to a lack of funds "after her divorce in 2010," when she allegedly "had no access to medical insurance or funds for medical care" (*see, e.g.*, ECF No. 18 at 2).

Even if Plaintiff was destitute as she alleges, she had access to free services through Avicenna, a local clinic (tr. 43, 410, 413), as Plaintiff has acknowledged in her memorandum (ECF No. 18 at 9), and as she testified at her hearing (tr. 43). Additionally, Plaintiff's treating physician had previously referred her to several academic programs such as the University of Alabama, Emory, or the Mayo Clinic due to her financial constraints (*see* tr. 408–09), as the ALJ noted (tr. 19–20). Moreover, as summarized above, Plaintiff received medical treatment from her gynecologist after 2010, in addition to other post-2010 medical treatment (*see, e.g.*, tr. 258–69, 327–36 (treatment records from 2012 and 2013), including treatment at Avicenna in 2013 and early 2014 (tr. 410–16).

---

[5] The ALJ twice noted that the <u>only</u> evidence provided from the relevant time period concerned Plaintiff's visit to her gynecologist on January 31, 2011, for a routine annual checkup and examination (tr. 17, 20). The ALJ additionally noted that during this visit Plaintiff "alleged no complaints, aside from weight gain [and that her] physical examination revealed normal findings . . .." (tr. 20).

The ALJ therefore properly considered Plaintiff's lack of treatment during the relevant period in making various findings, including with respect to Plaintiff's credibility and the severity of her physical and mental impairments or their corresponding limitations. *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) (failure to seek medical treatment for a long time during a claimed period of disability tends to indicate tolerable pain). This is especially so here, considering that the lack of treatment was but one factor of many considered by the ALJ in evaluating Plaintiff's claim (*see* tr. 13–24 (considering, among other factors, Plaintiff's work history and the timing thereof (e.g., after the EMG studies, during the relevant period); Plaintiff's self-reports regarding her abilities; the medical evidence of record (including MRI, x-ray, and EMG studies), even though it was not from the relevant period, as there was no other medical evidence to consider; the opinions and findings of Plaintiff's treating physicians (including opinions and findings made after personally examining Plaintiff or reviewing the results of various studies); the efficacy of Plaintiff's medications; and a successful back surgery in 2006)).

Lastly, given that the record contains virtually no medical evidence from the relevant period, Plaintiff failed to meet the burden she bears to prove she is disabled. 42 U.S.C. § 423(a)(1); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). To be eligible for benefits, Plaintiff must show that she was disabled on or before the last date for which she was insured. 42 U.S.C. § 423(a)(1)(A). Although the agency will often assist a claimant in developing evidence from the relevant period, here Plaintiff did not apply for DIB until November 30, 2012, nearly a year after the relevant period expired. Thus there was no way for the agency to assist Plaintiff in this regard or to otherwise obtain medical evidence from the relevant period, as none existed due to Plaintiff's failure to obtain treatment. Stated differently, the incomplete record is attributable to Plaintiff, not the agency, and the record falls far short of establishing disability.

V.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to close the file.

At Pensacola, Florida this 29th day of January 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**